UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| WILLIAM MCCALISTER, | ) |  |
|---|---|---|
| Plaintiff, | ) |  |
| v. | ) | No. 2:18-cv-00136-JPH-MJD |
| JONATHAN STEVENS individually and as an officer of the West Terre Haute Police Department, SGT. FROSHAUER individually and as an officer of the Terre Haute Police Department, | ) |  |
| Defendants. | ) |  |

**ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Jonathan Stevens, a West Terre Haute police officer, filed an "Intimidation Report" stating that as he was walking near the police station, someone shouted that he was a "f***ing dirty-ass cop" and threatened to shoot him. Officer Stevens's report identified William McCalister as the culprit and led to Mr. McCalister's arrest. Mr. McCalister brought this lawsuit alleging false-arrest claims in violation of federal and state law. Dkt. 1-1 at 5; *see* dkt. 54. Officer Stevens has moved for summary judgment. Dkt. [57]. Because there are genuine issues of material fact that must be resolved at trial, that motion is **DENIED**. Sergeant Froschauer, the only other remaining defendant, is **DISMISSED with prejudice** because Mr. McCalister is not maintaining any claims against him.

1

**I.**
**Facts and Background**

Because Defendants have moved for summary judgment under Rule 56(a), the Court views and recites the evidence "in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted).

In 2011, Plaintiff William McCalister's nephew, James Michael Mundy, was a suspect in a burglary. Dkt. 59-1 at 3 (McCalister Dep. at 12). Defendant Jonathan Stevens was dispatched to the scene. Dkt. 59-3 at 3 (Melton Dep. at 21). Mr. Mundy allegedly tried to drive over Officer Stevens, and Officer Stevens shot and killed him. Dkt. 59-3 at 3–5 (Melton Dep. at 21–23); Dkt. 59-2 at 2–3 (Stevens Dep. at 46–47). That shooting caused tension between Officer Stevens and Mr. Mundy's family, including Mr. McCalister. Dkt. 59-3 at 17 (Melton Dep. at 59).

Several years later, in October 2015, Mr. McCalister was arrested on battery charges. Dkt. 59-1 at 5–6 (McCalister Dep. at 14–15). Because of tension created by Mr. Mundy's death, Mr. McCalister did not want Officer Stevens escorting him to jail after his arrest. Dkt. 59-1 at 5–6, 23–24 (McCalister Dep. at 14–15, 54–55). Another officer took Mr. McCalister instead. Dkt. 59-1 at 8 (McCalister Dep. at 17).

Then, on December 2, 2015, Officer Stevens was walking near the police station when he heard someone call him a "f***ing dirty-ass cop." Dkt. 59-2 at 26 (Stevens Dep. at 101); dkt. 59-2 Exs. A, B. Officer Stevens identified that person as Mr. McCalister. Dkt. 59-2 at 26 (Stevens Dep. at 101).

2

Officer Stevens had Sergeant Froschauer join him to try to find Mr. McCalister. Dkt. 59-2 at 13 (Stevens Dep. at 82). They drove in the area where Mr. McCalister lived, but did not find him. Dkt. 59-2 at 16 (Stevens Dep. at 87). Officer Stevens filed a report about the incident, dkt. 59-2 at 6–7 (Stevens Dep. at 59–60); dkt. 59-2 Ex. A, which led to Mr. McCalister being arrested and charged with intimidation. Dkt. 59-3 Ex. J. The charge was dismissed with prejudice after Crede Fitzpatrick, Mr. Mundy's family friend, claimed that he had shouted at Officer Stevens and several affidavits were submitted attesting that Mr. McCalister was at work at the time of the incident. Dkt. 59-3 Exs. J, K-1; dkt. 59-1 at 10–15 (McCalister Dep. at 21–26); dkt. 59-4.

Mr. McCalister filed this action, which Defendants removed to this Court, alleging false arrest and false imprisonment against five police officers. Dkt. 1; dkt. 1-1. Mr. McCalister dismissed three officers with prejudice, dkt. 64; the remaining officers—Officer Stevens and Sergeant Froschauer—have moved for summary judgment, dkt. 57.

## II.
## Applicable Law

**A. Summary judgment**

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party must inform the court "of the basis for its motion" and specify evidence demonstrating "the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets this

3

burden, the nonmoving party must "go beyond the pleadings" and identify "specific facts showing that there is a genuine issue for trial." *Id.* at 324.

In ruling on a motion for summary judgment, the Court views the evidence "in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante*, 555 F.3d at 584.

## III.
## Analysis

### A. Sergeant Froschauer

Sergeant Froschauer argues that he is entitled to summary judgment because his limited involvement in Mr. McCalister's arrest cannot support liability. Dkt. 58 at 7–8. Mr. McCalister wrongly responds that he has already dismissed Sergeant Froschauer as a defendant. Dkt. 70 at 1. In reply, Sergeant Froschauer relies on that statement and asks to be dismissed. Dkt. 76 at 2.

Mr. McCalister has not asked to maintain any claim against Sergeant Froschauer. Sergeant Froschauer is therefore entitled to dismissal with prejudice. *See Palmer v. Marion County*, 327 F.3d 588, 597–98 (7th Cir. 2003); *Deputy v. City of Seymour*, 34 F. Supp. 3d 925, 920 n.3 (S.D. Ind. 2014); dkt. 64.

### B. Officer Stevens

#### 1. Federal false-arrest claim

Officer Stevens argues that he's entitled to summary judgment because (1) Mr. McCalister's arrest was not a constitutional violation and (2) he is entitled to qualified immunity. Dkt. 58 at 10–14. Mr. McCalister responds

that Officer Stevens violated his constitutional rights and is not entitled to qualified immunity because "Officer Stevens did not behave as a reasonably well-trained police officer should." Dkt. 70 at 14.

"Qualified immunity protects officers performing discretionary functions from civil liability so long as their conduct does not violate *clearly established* statutory or constitutional rights that a reasonable person would know about." *[Burritt v. Ditlefsen,](## )* 807 F.3d 239, 249 (7th Cir. 2015) (quoting *[Mustafa v. City of Chicago,](## )* 442 F.3d 544, 548 (7th Cir. 2006)). The right to be free from arrests unsupported by probable cause has long been clearly established. *[Id. at 250](## )*; *[Humphrey v. Staszak,](## )* 148 F.3d 719, 725 (7th Cir. 1998). When that right is violated, "[a] police officer who files a false report may be liable . . . even if he did not conduct the arrest himself." *[Acevedo v. Canterbury,](## )* 457 F.3d 721, 723 (7th Cir. 2006).

But qualified immunity applies if "arguable probable cause" supported filing the report. *[Burritt,](## )* 807 F.3d at 249; *see [Acevedo,](## )* 457 F.3d at 723. Arguable probable cause exists when "a reasonable officer could have mistakenly believed that probable cause existed." *[Id. at 250](## )* (quoting *[Fleming v. Livingston County,](## )* 674 F.3d 874, 880 (7th Cir. 2012)).

Officer Stevens argues that, at worst, his report's identification of Mr. McCalister as the culprit was a mistake that a reasonable officer could make.

Dkt. 58 at 14. Mr. McCalister argues that Officer Stevens is not credible and that any mistake was not reasonable. Dkt. 70 at 12–13.[1]

As Officer Stevens recognizes, dkt. 59 at 10 n.5, the designated evidence is sufficient for summary judgment purposes to show that the report was false—that is, its identification of Mr. McCalister as the culprit was wrong. Dkt. 59-1 at 10–15 (McCalister Dep. at 21–26).

The issue for determining whether qualified immunity applies, then, is whether the false report was supported by arguable probable cause. *See Burritt,* 807 F.3d at 249–50. If, as Officer Stevens argues, the false report was based on arguable probable cause, then qualified immunity applies. *See Muhammad v. Pearson,* 900 F.3d 898, 909 (7th Cir. 2018) (qualified immunity applied when mistaken identity was reasonable because some corroborating facts gave the officer arguable probable cause). But if the false report intentionally or incompetently accused Mr. McCalister, then qualified immunity does not apply. *See Hunter v. Bryant,* 502 U.S. 224, 229 (1991).

Officer Stevens argues that several facts gave him arguable probable cause to report that Mr. McCalister was the person who yelled at him: (1) the historical animosity between him and Mr. McCalister, (2) he had heard Mr.

---

[1] The parties do not argue whether Officer Stevens had arguable probable cause to believe that a crime had been committed, though Mr. McCalister mentions that "Mr. Fitzpatrick was merely utilizing his first amendment rights." Dkt. 70 at 9. Whether Officer Stevens was threatened is disputed—Officers Stevens's report says that the culprit said "he was going to shoot me," dkt. 59-2 Ex. A, while Mr. Fitzpatrick's affidavit said "I did not say anything, which would be construed as a threat," dkt. 59-7. Regardless, Officer Stevens's summary judgment motion can be resolved on the question of whether filing the false report was supported by arguable probable cause.

6

McCalister call him a "dirty-ass cop" before, (3) Mr. McCalister was Mr. Mundy's uncle and the culprit referred to Mr. Mundy as "nephew," and (4) Mr. McCalister lived near the police station. Dkt. 58 at 11–12.

But Officer Stevens's second and third reasons are disputed facts for summary judgment purposes and the Court "must give the non-moving party the benefit of conflicts in the evidence about what the officers actually knew at the time." *Hart v. Mannina,* 798 F.3d 578, 587 (7th Cir. 2015). For the second reason, the report says that when Mr. McCalister was arrested several weeks earlier for an unrelated battery, Mr. McCalister called him a "dirty-ass cop that shot Mike for no reason." Dkt. 59-2 Ex. A; dkt. 59-2 at 26 (Stevens Dep. at 101). In contrast, Mr. McCalister testified that the "only thing" he said to Officer Stevens at that time was that he didn't want Officer Stevens to be the one to take him to jail. Dkt. 70-4 at 7 (McCalister Dep. at 15). For the third reason, Officer Stevens argues that whoever shouted at him referred to Mr. Mundy as his "nephew," and Mr. Mundy was Mr. McCalister's nephew. Dkt. 58 at 12. But Officer Stevens did not include this detail in his report or deposition testimony. *See* dkt. 59-2 (Stevens Dep.); dkt. 59-2 Ex. A. These factual disputes must be resolved in Mr. McCalister's favor, *Zerante,* 555 F.3d at 584, so the Court cannot consider them as the basis for arguable probable cause.

That leaves Officer Stevens's first and fourth reasons—the historical animosity and that Mr. McCalister lived near the police station. Those general reasons cannot support arguable probable cause because the report falsely identified Mr. McCalister as the culprit even though Officer Stevens was only

7

twenty feet away when he made the identification and Mr. McCalister looked substantially different than Mr. Fitzpatrick. Dkt. 75-1 at 2 (McCalister Dep. at 28); dkt. 59-2 at 14 (Stevens Dep. at 83). At such a close distance, Officer Stevens should have been able to tell the difference, yet he unequivocally identified Mr. McCalister as the culprit. Dkt 59-2 Ex. A; *see* Dkt. 59-2 at 11–12 (Stevens Dep. at 78–79). Moreover, the report did not provide any physical description of the culprit, dkt. 59-2 Ex. A, and Officer Stevens would not describe the culprit's appearance at his deposition, dkt. 59-2 at 11–12 (Stevens Dep. at 78–79).

Viewing the many disputed and uncertain facts in Mr. McCalister's favor, a reasonable jury could conclude that filing the false report was either intentional or incompetent. *See Hunter,* 502 U.S. at 229. Such an error cannot supply arguable probable cause:

> [I]f an officer submitted an affidavit that contained statements that he knew to be false or would have known were false had he not recklessly disregarded the truth and no accurate information sufficient to constitute probable cause attended the false statements, not only is his conduct the active cause of the illegal arrest, but he cannot be said to have acted in an objectively reasonable matter.

*Lawson v. Veruchi,* 637 F.3d 699, 704 (7th Cir. 2011) (citation omitted); *see Hart,* 798 F.3d at 588. Without arguable probable cause, qualified immunity provides no protection. *Burritt,* 807 F.3d at 249; *see Kingsland v. City of Miami,* 382 F.3d 1220, 1223 (11th Cir. 2004).

The facts in this case are similar to the facts in *Norris v. Bain,* No. 1:04-cv-1545-DFH-TAB, 2006 WL 753131 (S.D. Ind. Mar. 21, 2006) (Hamilton, J.). There, Animal Control Officer Robert Stockton was investigating a barking dog when a man on a porch across the street said that he had a rifle and would shoot or kill Officer Stockton. *Id.* at *1. Officer Stockton called the police and pointed them to a house he claimed the suspect was at. *Id.* at *2. Police officers ordered everyone out of the house and arrested Duane Norris based on Officer Stockton's identification. *Id.* Mr. Norris sued Officer Stockton for wrongful arrest, arguing that Officer Stockton falsely identified him. *Id.* at *3.

Officer Stockton was not entitled to qualified immunity because his version of the story was uncorroborated and a witness testified that Mr. Norris was in the back room of the house when Officer Stockton was allegedly threatened. *Id.* at *3, 12–13. That created genuine issues of fact for trial about whether "Officer Stockton made a deliberately false report of a threat and falsely identified [Mr. Norris]," even though Mr. Norris showed no motive for Officer Stockton to falsely accuse him. *Id.* at *3–4. Here there are even more disputed issues of material fact because a jury could find that the historical animosity between Officer Stevens and Mr. McCalister provided a motive for falsely accusing Mr. McCalister. Like in *Norris*, when the evidence is viewed favorably to Mr. McCalister, the Court cannot grant summary judgment on qualified-immunity grounds. *Id.* at *12–13 (collecting cases). This case is therefore in "the province of a jury," regardless of whether Mr. McCalister is "likely to prove [his] claim" at trial. *Id.* at *5.

Officer Stevens argues that this case is instead like *Wooden-Ousley v. City of Chicago*, 393 Fed. Appx. 378 (7th Cir. 2010) and *Gibbs v. City of Chicago,* No. 12-cv-0566, 2014 WL 1031440 (N.D. Ill. Mar. 18, 2014)—cases involving reasonable eyewitness identifications. Dkt. 76 at 3–6. In *Wooden-Ousley*, while the police investigation involved "glitches and inconsistencies," the evidence did "*not* suggest that [the officer] manipulated the identification procedures." 393 F. App'x at 380–81. And in *Gibbs*, no evidence "support[ed] an argument that [the officers] either were lying or were unreasonably mistaken in believing that they observed Gibbs shoot [the victim]." 2014 WL 1031440 at *3. But here, when the facts and reasonable inferences are viewed in Mr. McCalister's favor, there is a factual basis to conclude that Officer Stevens intentionally or incompetently misidentified Mr. McCalister in his report.

### 2. False arrest under the Indiana Tort Claims Act

Officer Stevens argues that because he was acting in the scope of his employment, the Indiana Tort Claims Act gives him immunity from Mr. McCalister's state-law claim. Dkt. 58 at 14. Mr. McCalister did not address this argument. *See* dkt. 76. Because Officer Stevens was employed by a political subdivision, he has a "complete defense" if he was acting in the scope of his employment. *Bushong v. Williamson,* 790 N.E.2d 467, 472 (Ind. 2003) (explaining the Indiana Tort Claims Act). Whether an action is in the scope of employment is generally a fact question. *Id.* at 473.

Officer Stevens's argument is that "it is surely the epitome of a police officer's duty to report potentially criminal threats." Dkt. 58 at 15–16. But as explained above, whether the culprit threated to shoot Officer Stevens is a disputed fact. Even if he was threatened, Officer Stevens provides no legal authority showing that this is one of the "certain circumstances" when the scope of employment may be determined as a matter of law. *Bushong*, 790 N.E.2d at 473. Officer Stevens has not designated evidence or cited authority showing that he was acting in the scope of his employment as a matter of law when he filed his report. For example, he has not explained why it was in his scope of employment to misidentify Mr. McCalister while walking to his car after the workday ended. *See* dkt. 59-2 at 9 (Stevens Dep. at 62). Disputed material facts on these issues make summary judgment inappropriate.

## IV.
## Conclusion

Sergeant Froschauer is **DISMISSED with prejudice**; the Clerk **SHALL UPDATE** the docket accordingly. Officer Stevens's motion for summary judgment, dkt. [57] is **DENIED**.

**SO ORDERED.**

Date: 9/30/2019

*[signature: James Patrick Hanlon]*

James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

David P. Friedrich
WILKINSON GOELLER MODESITT WILKINSON AND DRUMMY
dpfriedrich@wilkinsonlaw.com

Justin Lee Froedge
GOEBEL LAW OFFICE
justinfroedge.goebellaw@gmail.com

Caren L. Pollack
POLLACK LAW FIRM, P.C.
cpollack@pollacklawpc.com

Zachary J. Stock
POLLACK LAW FIRM PC
zstock@pollacklawpc.com

Michael K. Sutherlin
MICHAEL K. SUTHERLIN & ASSOCIATES, PC
msutherlin@gmail.com